WILLIAM H. PLUMER & others *vs.* HOUGHTON & DUTTON COMPANY.

Suffolk.    November 12, 1931. — November 30, 1931.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Receiver. Equity Pleading and Practice*, Receivership proceedings, Decree, Appeal.

A decree in equity in receivership proceedings against a Massachusetts corporation, granting a petition of a creditor that all the assets of the corporation be sold, the business of the corporation having been conducted by the receiver at a loss, may be treated as a final decree for the purposes of an appeal to this court by another creditor.

When a judge hearing a suit in equity, after an appeal from a decree, reports the material facts found by him in response to a seasonable request by the appellant under G. L. c. 214, § 23, he does not make a report of the evidence but recites certain facts which he considers as material and which in his opinion form the basis of his decision; and an appeal from a denial by him of a motion by the appellant for modification of the report in which the appellant sets forth at considerable length facts which, he alleges, ought to have been included in the report and other facts which ought to be deleted therefrom, and supports his allegations by affidavits as to facts, presents no question of law to this court.

If a party to a suit in equity apprehends that he may desire to secure a review in this court of facts to be found or a decision to be rendered by the trial judge because plainly wrong on the evidence before him, appropriate steps should be taken in conformity to the rule, the statute and established practice to have the evidence reported; this rule of practice applies equally to cases heard on oral and to those heard on written evidence, and to those heard on statements made by counsel and received as basis for judicial action. Per RUGG, C.J.

Challenge, by the appellant in the circumstances above described, of the correctness of facts set forth in the report by the judge was ineffectual except so far as the facts appeared on the face of the report to be mutually inconsistent or plainly wrong or incompatible with the pleadings or other documents set forth in the record.

In a suit in equity against a Massachusetts corporation conducting a large department store in Boston, receivers were appointed. A creditor, averring that the receivers were conducting the business at a loss, petitioned for a sale of all the assets. After appropriate proceedings, two bids for purchase were filed. The receivers opposed acceptance of either bid, and each bidder urged the acceptance of his own. One bidder offered a much larger payment of cash than the other, but did not offer to relieve the estate of certain large and undetermined claims founded upon leases and upon a contract respecting trading stamps. The second bid, involving a smaller payment of cash, included a relieving of the estate entirely of those claims. The judge, after hearing the matter fully on statements by counsel, without adjudicating the final merits of the undetermined claims, reported fully the circumstances relating to such claims; found that both claims were asserted in entire good faith; that they were supported by many forceful considerations; that the amount available under the second bid to unsecured creditors could be fairly definitely stated as approximately thirty-seven per cent, while the amount available to such creditors under the first bid might be anywhere from approximately twenty-eight per cent to approximately forty-four per cent, depending on what would be the results of full litigation of such claims; and ordered the entry of a decree accepting the second bid and a sale accordingly. A creditor of the corporation other than the one petitioning for the sale appealed. *Held*, that

(1) The ordering of a sale of property in the hands of the receivers and the price and terms thereof rested mainly in the sound judicial discretion of the trial judge;

(2) It was not an abuse of discretion for the judge to accept the second bid without first settling contentions respecting the undetermined claims under the leases and the contract respecting trading stamps;

(3) No abuse of discretion was shown by the record.

The appellant in the proceedings above described contended that such undetermined claims were without foundation and were asserted as part of a "collusive effort" or a "conspiracy" to give one of the claimants a preference and to continue the operation of the business of the defendant corporation in hands acceptable to the lessors and to the receivers, and it was *held,* that

(1) The words "collusive effort" and "conspiracy" import moral obliquity, which should not be presumed and could not rest upon surmise or conjecture;

(2) The general principle, that every presumption is to be indulged in favor of good faith and honesty of the parties assailed, was supported by categorical findings by the trial judge, and, the record disclosing no facts which would justify a contrary inference, the contention was without foundation.

In the decree of sale above described, it was proper to include clauses to the effect (1) that the sale should not be completed by delivery of possession, control and operation of the business until either the time for taking appeal had expired or the decree should be finally affirmed after appeal, and (2) that in the meantime the receivers should continue in possession, operation and control of the business for account of the purchasers if the sale went through; otherwise, for their own account.

It was within the power of the court to enter a decree in the proceedings above described on the same day as, but before the entry of, the decree of sale, on joint petition by the lessors of parcels of real estate occupied by the defendant corporation, granting to the respective lessors permission to enter upon their respective premises to terminate their respective leases for any default existing in the performance of the terms and conditions of the leases and to repossess themselves of their premises, and permitting the receivers to occupy the premises as if there had been no reëntry until the further order of the court; and, the record disclosing no facts and no evidence respecting such decree, an appeal therefrom by the same creditor who appealed from the decree of sale was without merit.

The merits of the undetermined claims of creditors not having been adjudicated by the judge in the proceedings above described, no error of law appeared in his denial of a motion by the appellant that no payment nor action toward satisfaction of one of those claims be taken until after full hearing.

A motion by the appellant in the proceedings above described, requesting the inclusion in the record of "Suggestion A" and "Suggestion B," which were statements by counsel that numerous creditors with claims aggregating a considerable amount approved the appeal and desired that it be sustained, was not in accordance with equity practice, and an appeal from the denial of such a motion presented to this court no question of law.

BILL IN EQUITY, filed in the Superior Court on December 1, 1930, for the appointment of a receiver of Houghton & Dutton Company, a Massachusetts corporation.

The defendant answered consenting to the appointment of receivers, and an interlocutory decree was entered by order of *Cox*, J., making such appointment.

After intermediate proceedings, Zubich Shoe Company, a creditor, on May 3, 1931, filed the petition for sale of all assets of the corporation described in the opinion. The petition was heard by *Lummus*, J., by whose order a decree of sale was entered.

On August 29, 1931, Franklin Shoe Company appealed from such decree and, under G. L. c. 214, § 23, requested a report of facts. Such report was filed by the judge on September 15, 1931. Material facts therein stated are set out in the opinion, where also are described other proceedings.

*M. C. Taylor*, (*J. B. Rintels* with him,) for Franklin Shoe Company.

*R. C. Evarts*, (*S. L. Kaplan* with him,) for the receivers of Houghton & Dutton Company.

*R. Homans*, (*C. L. Newton* with him,) for Saltonstall and others, trustees, and others.

RUGG, C.J. 1. This is an appeal by a creditor of the defendant from a decree entered on August 28, 1931, whereby the receivers of the defendant were authorized and directed to sell its entire business and assets to named purchasers upon specified terms. The business and assets consisted of a large and long established department store conducted at the corners of Tremont, Beacon and Somerset streets in Boston. Upon petition of the plaintiffs as creditors of the defendant, receivers were appointed in December, 1930, to take possession of all the property and business of the defendant and to conduct its business. In May, 1931, petition was filed by one of the creditors of the defendant setting out that the business of the defendant had been conducted by the receivers at a loss, and praying that the receivers be directed to sell all the assets of the defendant. After divers intermediate proceedings,

said decree of sale was entered. In these circumstances the decree of sale may be treated as a final decree for the purposes of appeal. *Hutchins* v. *Nickerson,* 212 Mass. 118, 120. *Barringer* v. *Northridge,* 266 Mass. 315, 318. *Sage* v. *Railroad Co.* 96 U. S. 712. *Rector* v. *United States,* 20 Fed. Rep. (2d) 845, 862–872, and cases reviewed. It is the rule of equity practice that cases can come before this court as of right only on appeal from a final decree. *Siciliano* v. *Barbuto,* 265 Mass. 390, 394. *Knox* v. *Springfield,* 273 Mass. 109.

2. The receivers were directed to advertise for bids for the purchase of the business and assets of the defendant as a going concern. Three sealed bids were received and were opened by the judge on August 17, 1931. In order to enable all parties interested to study the bids, adjournment was made for three days and hearings were held on August 20, 21 and 25, 1931. The acceptance of one bid was not urged. The acceptance of the Greenberg bid, so called, was urged by some, and of the Bird bid, so called, by others. The receivers opposed the acceptance of any of the bids upon the ground that they believed all the bids were inadequate and that, if allowed to conduct the business for a few years, they could ultimately provide for the payment of creditors in full. Before deciding which bid, if any, should be accepted, the trial judge heard all parties who desired to be heard, including the receivers, parties favoring the acceptance of one or the other bid, certain creditors opposed to the acceptance of either bid, and the chairman of a creditors' committee who stated that its members were divided in opinion as to the bid to be accepted. At the suggestion of the judge, both bids were amended or modified in writing and were presented at the hearing on August 25. On that date the preparation of a decree for the acceptance of the Bird bid as modified was directed by the judge. Further hearings as to the form of the decree were held on August 27 and August 28, and on the latter date the final decree of sale was entered. The Greenberg bid having expired by its own limitation on August 27, Greenberg asked for and procured the return

of his deposit. The judge filed a report of the material facts found by him pursuant to request by the appealing creditor made under G. L. c. 214, § 23. The facts heretofore stated are gleaned from that report, which also contains this paragraph: "At the hearings before me no evidence was introduced and none was offered. I based my decision on an analysis of the bids themselves, and on the statements of counsel, and the receivers and of all other parties who desired to be heard. None of the basic facts and figures herein stated was disputed, although some of the conclusions therefrom were disputed."

The appellant was dissatisfied with the report of material facts and filed a motion for modification of the report setting forth at considerable length facts which, as it alleged, ought to have been included in the report and other facts which ought to be deleted from the report. This motion was supported by affidavits as to facts, but was denied after hearings and the creditor appealed. The appeal from that denial presents no question of law. When a judge reports the material facts found by him, either voluntarily or in response to seasonable request under G. L. c. 214, § 23, he does not make a report of the evidence but recites certain facts which he considered as material and which in his opinion formed the basis of his decision. It is not a new or additional proceeding after the termination of the case by final decree, but is in the nature of an extension of the record in the form of a statement of facts in the mind of the judge when his decision was made, which, when included in the record, puts the case in proper form for hearing on the appeal. *Worcester* v. *Lakeside Manuf. Co.* 174 Mass. 299, 300. *Berman* v. *Coakley*, 257 Mass. 159, 161. *Martell* v. *Moffatt*, 276 Mass. 174, 177. The judge knows best what facts were material to his decision and he cannot be compelled to include in such report facts which in his own mind were given no weight in reaching a determination as to the rights of the parties. There is nothing wrong in suggesting to the trial judge a change in such report in appropriate instances. But such suggestions are addressed to his sound judicial discretion and cannot form the foundation of review of his action by

any other tribunal. *Warfield* v. *Adams*, 215 Mass. 506, 519, 520. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 494. *Eaton* v. *Eaton*, 233 Mass. 351, 369. *Berenson* v. *French*, 262 Mass. 247, 254. *Donnell* v. *Goss*, 267 Mass. 444.

If the parties had desired to secure review in this court of the facts found or decision rendered by the trial judge because plainly wrong on the evidence before him, appropriate steps should have been taken in conformity to the rule, the statute and established practice to have had the evidence reported. This rule of practice applies equally to cases heard on oral or written evidence, or on statements made by counsel and received as basis for judicial action. *Romanausky* v. *Skutulas*, 258 Mass. 190. *Columbian Insecticide Co. of Boston* v. *Driscoll*, 271 Mass. 74, 77. *Commonwealth* v. *Suffolk Trust Co.* 161 Mass. 550, 551. *Cook* v. *Mosher*, 243 Mass. 149, 152. *Dwyer* v. *Dwyer*, 239 Mass. 188. Having failed to follow that clear course, the parties must accept the report of material facts as finally made by the trial judge. There is no short cut to avoid this, and no other way to deal with an equity suit on appeal. *Sullivan* v. *Roche*, 257 Mass. 166, 168–169. It follows from these settled principles that challenge of the correctness of facts set forth in the report by the appellant is ineffectual at this stage except so far as they appear on the face of the report to be mutually inconsistent or plainly wrong or incompatible with the pleadings or other documents set forth in the record.

3. The first contention urged by the appellant is that on the face of the respective bids the Greenberg bid, rejected by the court, is far superior to the Bird bid, ordered accepted by the decree of sale. The main difference between these two bids consists in these facts: the accepted bid would make available to the receivers approximately $378,000, and would give to the receivers releases from claims of the owners of the real estate occupied by the defendant for unpaid rent and for restoration of the buildings to their condition as separate pieces of property, amounting as estimated to about $410,-000; and the receivers would also be discharged of a claim of about $100,000 by The Sperry and Hutchinson Company

and the aggregate claims of creditors would be correspondingly reduced. The rejected bid would make available to the receivers about $500,000, but the receivers would not be released from the claims of the owners of the real estate nor from the Sperry and Hutchinson Company bill. The finding of the judge proceeds in these words: "The determination as to which of the two bids (the Bird bid and the Greenberg bid) was the better depended, therefore, upon a number of considerations among them the following: (1) whether the landlords' claims would be ultimately allowed, and if so, for what amount; (2) whether The Sperry and Hutchinson Company claim should be paid in full as a receivers' obligation (as it was claimed to be because of various decrees of the court and the equities of the situation) or otherwise; and (3) the expenses which would be involved in the litigation of these claims and the possible compromise of one or both of them. Therefore, before further analysis of these two bids, I shall report certain findings concerning these claims. The landlords' claims may be divided into two parts: (1) a claim for back rent amounting to $132,750, and (2) a claim for the cost of restoring party walls which the Houghton & Dutton Company was obligated to restore at the termination of its lease amounting to $277,740." The defendant occupied its store as tenant of two different landlords under long term leases, both expiring in 1944. One lease to it comprised premises numbered on Tremont Street, Beacon Street and Pemberton Square and was from trustees of the Houghton & Dutton Building Trust under a declaration of trust, the beneficial interest in which was held by holders of common and preferred shares. The yearly rent reserved was $200,000 in cash plus the payment of all taxes and other expenses of lessors. The other lease comprised premises numbered 55–57 Tremont Street at a yearly rent of $100,000 plus Boston taxes. Under the first of these leases there was unpaid and overdue rent amounting to something over $100,000. Under the other of these leases a claim of rental due from the defendant was made amounting to $18,750 for the difference between rent paid by the receivers under decree of

the court confirming an agreement by them with the lessors and the rent due under the lease. The appellant contends that this claim is without foundation in law. The lessors are not before us and the validity is not directly involved and cannot be determined finally in this proceeding. It is enough that the claim appears to be made in good faith and to have been considered by the trial judge as having substance.

The landlords present further claims arising from the fact that, prior to the receivership by agreements with the tenant, the buildings on the leased premises were remodeled into one structure for use by the tenant as a single department store under a unified management, and without regard to an alleyway owned by one of the lessors over which the other lessors had some rights of passage. Owing to the construction on the two properties of buildings which, if not occupied as one, lacked several side walls, both leases in force when the receivers were appointed contained provisions compelling the tenant to restore at or before the expiration of the respective terms, the walls and other structures necessary to leave each landlord with a complete, separate building. Estimates were presented to the trial judge showing that the total cost to the tenant of making these restorations and reconstructions in accordance with the requirements of the leases would be approximately $278,000. The validity of these claims was strongly urged in behalf of the landlords, but stoutly contested by others in interest. The trial judge states that he heard all counsel who desired to be heard on that question.

The facts found by the trial judge concerning the claim of The Sperry and Hutchinson Company are that it was based on a promissory note for $100,000 given for a loan to the defendant, which was secured by the entire issue of fifteen thousand common shares and by six hundred twenty-four of the preferred shares of the Houghton & Dutton Building Trust representing the equity in the larger part of the building occupied by the defendant. The Bird bid required the delivery to the purchasers free and clear of liens of all these shares, while the Greenberg bid in its final form was not based on such requirement. The Sperry and

Hutchinson Company, a corporation, furnishes trading stamps under contracts to department and other stores. Its note of the defendant fell due shortly after the appointment of the receivers. There was a contract with four years to run, whereby that company agreed to furnish trading stamps to the defendant. It was for the interest of the defendant that the time for payment of its note be extended and that the stamp contract be modified so that it be subject to cancellation on short notice, and finally that it should terminate in the event of a sale of the business of the defendant by the receivers. Agreements effectuating these results were made between the receivers and The Sperry and Hutchinson Company and approved by decrees of the court. Further findings of the trial judge touching this matter are: "These agreements with The Sperry and Hutchinson Company were for the best interests of the receivership estate and the creditors of Houghton & Dutton Company inasmuch as a sale of the business and assets of Houghton & Dutton Company as a going concern was contemplated, and any prospective purchaser intending to continue to operate the business would presumably want the shares in Houghton & Dutton Building Trust held by The Sperry and Hutchinson Company as security since they represent the equity in the larger part of the building occupied by Houghton & Dutton Company, and would presumably wish to take free of any obligations under the stamp contract with The Sperry and Hutchinson Company. Counsel for The Sperry and Hutchinson Company forcibly stated before me his client's position that it was equitably and morally entitled on the foregoing state of facts and on the record in these proceedings to full payment of its claim of $100,000. I also heard all other counsel who desired to be heard in opposition to this argument. Sperry and Hutchinson refused to surrender any of its security unless its claim of $100,000 was fully paid. If Sperry and Hutchinson were not paid in full it would have the right to realize on its security and prove for the balance of its claim as a general creditor. Under existing circumstances the shares of the Houghton & Dut-

ton Building Trust held against the Sperry and Hutchinson loan is [are] of little substantial value to any one other than the occupant of the real estate owned by Houghton & Dutton Building Trust; to any such occupant, the shares would be of substantial value, since they represent the ultimate equity in the real estate. The amount available under the Bird bid to unsecured creditors can be fairly definitely stated as approximately thirty-seven per cent, while the amount available to such creditors under the Greenberg bid might be anywhere from approximately twenty-eight per cent to approximately forty-four per cent, depending on what would be the results of full litigation of the landlords' claims and of the claim of The Sperry and Hutchinson Company. In making these computations no provision has been made for the payment of receivers' and similar fees." Then follow various calculations as to the percentages on the claims of creditors available from the Greenberg bid based on different assumptions as to the allowance of the several claims of the landlords and as to the payment of the Sperry and Hutchinson Company note as a secured or unsecured claim. These results vary from twenty-eight per cent, on the footing that all these contested claims should be established in full according to the contentions of their respective holders, to forty-four per cent, on the footing that the claims of the landlords be entirely disallowed and the Sperry and Hutchinson claim be treated as unsecured. The conclusion of the trial judge is in these words: "Neither the landlords' claims nor The Sperry and Hutchinson Company claim were before me for allowance or disallowance, and I made no finding as to the validity of either. They were before me merely as a very few of the many elements in the complicated situation which arises in any judicial sale of a going business of this size. I find that the claims both of the landlords and of The Sperry and Hutchinson Company were asserted in entire good faith and that they are supported by many forceful considerations. In the exercise of my judicial discretion, and considering the probabilities and possibilities in regard to the various contingencies that might happen, I deter-

mined that the receivership should not be allowed to continue longer, that the Bird bid was a better bid than the Greenberg bid, that the Bird bid would in all probability yield more for general creditors than would the Greenberg bid, and that the acceptance of the Bird bid would facilitate the prompt settlement of the receivership estate. Therefore, without considering the effect of the acceptance of any of the bids upon the future of employees, upon the landlords, upon those creditors who might have an opportunity to do business in the future with a going concern, or upon the future of the community, I ordered the acceptance of the Bird bid and the entry of said decree of sale." Based upon the theory that the factors last mentioned might be material, there follow certain findings as to further reasons for the acceptance of the Bird bid. Those findings are disregarded in this decision.

The appellant supports its contention that the rejected bid on its face is far superior to the one accepted by numerous calculations and analyses of the debts and assets of the defendant. It is not necessary in detail to recite or to refute the relevancy of these arguments founded upon figures. The ordering of a sale of property in the hands of a receiver and the price and terms of such a transfer rest mainly in sound judicial discretion. Unless a decree of that nature is based upon material error of law, it will not commonly be set aside save in instances where there has been abuse of discretion. The chief object of a receivership is to conserve the property of a debtor for the benefit of the creditors and other persons interested, and to bring judicial custody to an end at the earliest moment consistent with the welfare of those concerned. In the main, the largest practicable results for the creditors ought to be achieved. The course most likely to bring to pass such results not infrequently depends upon the exercise of practical wisdom and business sagacity rather than upon arithmetical computations and the niceties of disputatious argument. No mean factor in the administration of a receivership is to end incidental litigation as soon as is consistent with fair dealing and reasonable expedition

in reaching a termination of the controversies. *Boucher* v. *Hamilton Manuf. Co.* 259 Mass. 259, 272. *Stokes* v. *Williams,* 226 Fed. Rep. 148. The findings of the trial judge, as shown by the summary and the quotations already made, demonstrate that the judge was guided by correct principles of law in making his decision.

It is manifest that, if every doubt could with the assurance of certainty be resolved in advance against the disputed claims already described against the defendant, the rejected bid would yield a larger return to the business in the hands of the receivers. It is equally manifest that all such doubts cannot thus be resolved. The record as a whole appears to support the conclusion of the trial judge that the claims of the lessors might be supported on strong reasoning. Those claims afforded grounds for litigation fruitful in protracted delays and uncertainty of outcome, with accompanying inevitable expense. The extent of these delays and the probable result of the litigation and its necessary expense cannot be foretold. It is contended by the lessors that the probability of their claims is established by *William Filene's Sons Co.* v. *Weed,* 245 U. S. 597; *Pennsylvania Steel Co.* v. *New York City Railway,* 198 Fed. Rep, 721, 740–742; *Gehr* v. *Mont Alto Iron Co.* 174 Penn. St. 430, and similar cases. The appellant contends that such claims cannot be established as to the items arising since the appointment of the receivers upon the authority of cases like *Old Colony Trust Co.* v. *Medfield & Medway Street Railway,* 215 Mass. 156, 162; *Shaw* v. *United Shoe Machinery Co.* 220 Mass. 486; *Davis* v. *Mazzuchelli,* 238 Mass. 550, 556, and *Meltzer* v. *Cohen,* 260 Mass. 466. It is not necessary to enter into a discussion of those contentions, or to make any intimation as to their relative validity. They were not before the trial judge for final decision.

The value of the lien held by The Sperry and Hutchinson Company on the shares of the Houghton & Dutton Building Trust, and the extent of its equitable claim to payment in full out of the general assets of the defendant, in preference to other unsecured creditors, do not seem on the surface to stand on too firm ground. No argument has been addressed

to us in their favor because The Sperry and Hutchinson Company has not been represented at the hearing on this appeal. In view of the findings of the trial judge, those claims cannot be pronounced frivolous or lacking in legal support on considerations of an equitable nature. In any event, the finding that it would be more beneficial to the creditors and to the estate as a whole to accept the bid requiring (1) transfer, free from all claim, to the purchaser of these shares which, subject to the lien of The Sperry and Hutchinson Company, are a part of the assets of the defendant, and (2) the extinguishment of the claim of The Sperry and Hutchinson Company, rather than the bid in effect requiring The Sperry and Hutchinson Company to realize on the security of its lien and then to prove against general assets of the defendant the balance of its note, cannot be said to be an abuse of judicial discretion. It does not create a preference in favor of The Sperry and Hutchinson Company not grounded upon a sufficiently firm basis. It is an incident of the transaction as an entirety likely according to the findings to yield more for early distribution than any other plan.

The essential contention of the appellant is that it was an abuse of discretion on the part of the trial judge not to settle these controversies before accepting the Bird bid, or to prefer that bid above the Greenberg bid without such adjudication. The question before the trial judge was not the proof of claims. The question was primarily whether the active receivership should be ended by sale of the business and assets of the defendant. That question was decided in the affirmative when the decree was entered calling for bids. That decree has not been assailed. It was then a practical question before the court after the bids were ready for consideration. The receivership had been conducted at a loss. The judge thought it ought to be ended. The maker of the Greenberg bid had not made any arrangement with the lessors to continue in occupation of the real estate. The makers of the Bird bid had an executed lease to themselves of that real estate delivered in escrow conditional upon being the successful bidders.

The Greenberg bidder had no assurance of controlling the larger part of the real estate occupied by the business through ownership of the shares of the Houghton & Dutton Building Trust. The Bird bidders made such control a condition of their bid. Acceptance of the Greenberg bid held out a considerable likelihood of litigation which might delay the carrying out of the sale, continue the receivership, and postpone the final settlement of the proceedings. Acceptance of the Bird bid obviated these difficulties. It cannot rightly in our opinion quite be said, in view of all these factors, that there was abuse of discretion on the part of the trial judge in entering the decree accepting the Bird bid. *Boucher* v. *Hamilton Manuf. Co.* 259 Mass. 259, 270–272.

4. The appellant contends that the claims of the lessors and of The Sperry and Hutchinson Company are without foundation and are asserted as part of a "collusive effort" or a "conspiracy" to give The Sperry and Hutchinson Company a preference and to continue the operation of the business of the defendant in hands acceptable to the lessors and to the receivers. That contention has perhaps been sufficiently answered by what has already been said. Dealing with it directly, that contention has no support in the record. The words "collusive effort" and "conspiracy" import moral obliquity. According to their natural meaning, they signify an attempt to perpetrate a fraud. Such conduct is not to be presumed. It cannot rest upon surmise or conjecture. It must be proved by direct evidence or by justifiable inference from established circumstances. There is nothing sinister in the conduct, either of The Sperry and Hutchinson Company or of the lessors, disclosed in the findings of the judge. His conclusion already quoted upon both these matters is explicit in favor of good faith, and further that these claims are supported "by many forceful considerations." The edge of these findings is not dulled by the fact, if it be a fact, (not appearing on the record but asserted as part of the motion of the appellant for modification of the report already described) that an officer of The Sperry and Hutchinson Company was a participant in

the Bird bid. All the factors of that nature were before the trial judge and given such weight as he thought they deserved. It was not collusive on the part of the lessors to make a tentative lease of the real estate to prospective tenants of financial strength. In the conditions confronting the owners of the real estate it was quite warrantable conduct on their part to make every reasonable effort to secure responsible tenants likely to be able and willing to continue the department store business formerly conducted by the defendant. The appellant made rather severe strictures upon the receivers and their conduct of the business and their attitude toward the sale. It is true that one of the receivers was the president of the defendant corporation. The other two receivers, however, were so far as appears entirely independent persons, whose sole interest was for the welfare of all concerned in the receivership. These three were appointed temporary receivers on the day of the filing of the bill by a creditor of the defendant. The defendant, on the same day, filed an answer assenting to the receivership pursuant to a vote passed by its directors in anticipation of the filing of the bill. A week later the temporary receivers were appointed permanent receivers. Giving full effect to' the principles declared in *Harkin* v. *Brundage*, 276 U. S. 36, so far as pertinent, there appears to be nothing in the present record to indicate that the receivers have not acted with business sagacity and in entire good faith. As to all these contentions, the general principle is that every presumption is to be indulged in favor of good faith and honesty of the parties assailed. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 17. *Larkin* v. *County Commissioners*, 274 Mass. 437, 440. These presumptions are supported by categorical findings by the trial judge. There are no facts which would justify a contrary inference.

5. Certain specific objections to the decree of sale not already discussed remain to be considered. Unequivocal assertions by the trial judge that everybody who desired was given a full hearing are not to be met by affidavits to

the contrary.   As already pointed out, that is not the way to review alleged errors of an equity judge.

Attack is made on the clause in the decree of sale to the effect (1) that the sale should not be completed by delivery of possession, control and operation of the business until either the time for taking appeal had expired or the decree should be finally affirmed after appeal, and (2) that in the meantime the receivers should continue in possession, operation and control of the business for account of the purchasers if the sale went through; otherwise, for their own account. This was a proper provision in the decree of sale.   It safeguards the rights of the defendant and its creditors if the decree should be reversed.   It is fair to the purchasers if the decree be affirmed.   Its tendency is not to make the sale optional with the purchasers up to the time of final disposition of the decree of sale.

The contention that the decree of sale does not conform to the bid as modified is without merit.

6. A decree was entered on August 28, 1931, (prior to the entry of the decree directing sale of the assets) on joint petition by the lessors of both parcels of real estate, granting to the respective lessors permission to enter upon their respective premises to terminate their respective leases for any default existing in the performance of the terms and conditions of the leases and to repossess themselves of their premises, and permitting the receivers to occupy the premises as if there had been no reëntry until the further order of the court.   From this decree the same creditor appealed. No evidence is reported touching the hearing on this petition. No facts were found respecting it.   The only question presented on such an appeal is whether as matter of law the decree could have been entered on the pleadings.   It is too plain for discussion that the record discloses no ground for disturbing that decree.   *Brogna* v. *Commissioner of Banks*, 248 Mass. 241, 243.   *Levinson* v. *Connors*, 269 Mass. 209, 210.   If and so far as any matter touching this decree is open upon the report of material facts, it is included in what has been already said.   No error is shown in this particular.

7. Several appeals from other decrees are included in the

record. On August 31, 1931, the appealing creditor filed a motion setting forth in some detail the claim against the defendant of The Sperry and Hutchinson Company on its loan and its lien on shares of the Houghton & Dutton Building Trust pledged with it as collateral and praying that the receivers be ordered (1) not to pay the claim in full, (2) not to purchase the shares so pledged except on stated terms, and (3) not to purchase such shares until after full hearing upon all proffered relevant evidence. Upon that petition this order was made: "No claim on the part of The Sperry and Hutchinson Company has in fact been adjudicated or ordered paid; but by a decree entered on August 28, 1931, an incidental provision in the sale of the receivership assets might require the receivers to purchase the shares of stock held by The Sperry and Hutchinson Company at a price which might be $100,000. Whether the court was right or wrong in permitting such a provision to be one of the incidental terms of the sale of the receivership assets, the question was fully dealt with by this court in the decree entered August 28, 1931, and is open upon the appeal of the present moving party now pending from that decree. So far as the present motion amounts to a petition for a rehearing of that question, the court declines to grant a rehearing, and dismisses the motion. So far as the motion is directed to future possible action by the court with reference to the claim of The Sperry and Hutchinson Company not included in the decree entered August 28, 1931, the court dismisses the present motion without prejudice to presenting the same matter later when the occasion for dealing with it shall arise." There was no error in this. The reasons have already been stated in discussing the decree of sale.

8. The appellant, on October 15, 1931, filed a motion requesting the inclusion in the record of "Suggestion A" and "Suggestion B," which were statements by counsel that numerous creditors with claims aggregating a considerable amount approved its appeal and desired that it be sustained. There is no such practice in equity as was here attempted. Appeal from the denial of this motion presents no question

of law.   If such creditors desired to appeal from the decree of sale they should have done so in conformity to the law. Whatever merit there was in the appeal seasonably taken and perfected, neither gained nor lost any of its force by the proposed motion.

The case has been considered as if the Greenberg bid were still available.   Statement to that effect was made at the bar. That assumption has been made in favor of the appellant. There is nothing on the record to support that assumption. However that may be, and whether it is still open or not, every contention put forward in behalf of the appellant has been considered.   Further discussion is not required.   Decree of sale and all other decrees and orders appealed from and disclosed on the record are affirmed.

*Ordered accordingly.*